# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SAUNDERS, | CASE NO. 1:02-CV-05806-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| J. W. FAIRMAN, et al., | |
| Defendants. | (DOC. 50) |
| / | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.   Background**

Plaintiff Jason Saunders ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's First Amended Complaint, filed May 30, 2008, against Defendants Forener, Gonzales, Johnson, Masiel, Nelson, Smith, and Snell for retaliation in violation of the First Amendment, violation of the Due Process Clause of the Fourteenth Amendment, failure to protect in violation of the Eighth Amendment, promulgation or implementation of an unconstitutional policy, and state law claims. On July 10, 2009, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 103. The Court deferred consideration of the motion until additional discovery was conducted, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. After discovery was closed, Plaintiff was provided the opportunity to file an opposition, but failed to do so.[1] The

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on January 24, 2007. Doc. 70, Second Informational Order; *see Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1

matter is submitted pursuant to Local Rule 230(l).

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

1  *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.
2  Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the
3  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
4  nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem
5  Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

6        In the endeavor to establish the existence of a factual dispute, the opposing party need not
7  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
8  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
10 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
11 *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963
12 amendments).

13       In resolving a motion for summary judgment, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
15 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477
16 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
17 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United
18 States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not
19 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from
20 which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-
21 45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

22       Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as
24 a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
25 issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).
26 ///
27 ///
28 ///

III.     **Statement Of Facts**[2]

Plaintiff was an inmate at California Substance Abuse Treatment Facility and State Prison at Corcoran during the events at issue in this action. First Am. Compl. ("FAC") ¶ 4, Doc. 87. Plaintiff was attacked by another inmate, Bernacett, on February 25, 1999, at approximately 8:50 p.m. Defs.' Counsel Young Decl., Ex. B, Incident Report No. SATF-03-99-02-0067, at 2, 4-14, Doc. 106. At the time of the attack, Plaintiff was sitting at a table located in the dayroom of an area of the prison called "C" section, building one. *Id.* at 4. Bernacett was housed in cell C1-123L, adjacent to the dayroom. *Id.* at 2.

Earlier on the evening of the attack, Bernacett informed the Control Booth officer, Defendant Nelson, that he was going in to his cell for the night to lock up, but that he may need out later as a representative of the Men's Advisory Council. Nelson Decl. ¶ 4., Doc. 105. Defendant Nelson, as the Control Booth officer, had the controls to open and close the cell doors in C-section. *Id.* ¶ 3.

The Men's Advisory Council is an inmate organization designed to facilitate a direct line of communication with staff, administration, and general population inmates. Gonzalez Decl. ¶ 5, Doc. 104. Bernacett was a housing unit representative for unit one, and Plaintiff was the treasurer. Young Decl., Ex. I, CDC 602 Inmate Appeal No. SATF-C-00-01126 at 95-96.

Just before the attack, Defendant Nelson observed a third inmate, Valdez, standing in front of Bernacett's cell. Nelson Decl. ¶ 5. Valdez asked Defendant Nelson to open Bernacett's cell so that Bernacett could conduct Council business. *Id.* ¶¶ 5-6. Initially, Defendant Nelson cracked the door so that Bernacett and Valdez could speak to each other. *Id.* ¶ 6. Valdez then asked Defendant Nelson to open the door wider so that Bernacett could go out of the cell to conduct his business. *Id.*

As soon as the cell door opened, Bernacett charged across the dayroom towards Plaintiff. Nelson Decl. ¶ 6, Gonzalez Decl.¶ 6, Young Decl., Ex. B. Bernacett began to hit

---

[2] Defendants' facts are considered undisputed to the extent that they are supported by citation to materials in the record. Fed. R. Civ. P. 56(c). The Court will consider only those facts and evidence that are relevant to resolving the motion for summary judgment.

4

Plaintiff in the upper body and facial area. *Id.* Plaintiff alleges Bernacett attacked him "for a substantial amount of time." FAC ¶ 30. In a prison administrative appeal, Plaintiff estimates that Bernacett hit him approximately five times. Young Decl., Ex. I at 89.

Plaintiff began to defend himself by standing up from the dayroom table and hitting Bernacett. Nelson Decl. ¶ 6, Gonzalez Decl. ¶¶ 7-8, Young Decl., Ex. B. Concurrently, Officers began to yell for the inmates to "get down." Gonzalez Decl. ¶ 6, Nelson Decl. ¶ 7, Young Decl., Ex. B. Defendant Gonzalez was working in the dayroom in the vicinity of the fight. Gonzalez Decl. ¶ 4. Defendant Nelson, from the Control Booth, activated his personal alarm. Nelson Decl. ¶ 7. Every officer has such an alarm button on their belt that activates a loudspeaker in the section. *Id.* All inmates are taught to get down on the ground when an alarm is sounded, and all staff are trained to respond to the scene to assist in restoring order. *Id.*

Defendant Nelson considered his options to stop the fighting from his position in the control booth, including considering using a rubber-baton weapon to fire at the combatants in order to stop the fighting. Nelson Decl. ¶¶ 8, 12. Defendant Nelson did not load the rubber batons into the firearm located in the Control Booth or take any steps to use force to stop the fighting. Nelson Decl. ¶ 8. Defendant Gonzalez was able to stop the incident with pepper spray. Gonzalez Decl. ¶ 8. Defendant Gonzalez continued to yell for both inmates to "get down." Gonzalez Decl. ¶ 7. Both inmates ignored Gonzalez's order. *Id.* Defendant Gonzalez then yelled "O.C.," as a verbal warning that he would use Oleoresin Capsicum (pepper spray) if the combatants did not follow his order to get down. *Id.* Defendant Gonzalez then sprayed both inmates with two, two-second bursts of pepper spray to the facial area. *Id.*

Plaintiff next threw Bernacett to the floor and fell on top of him. Nelson Decl. ¶¶ 6-8, Gonzalez Decl. ¶¶ 8-9, Young Decl., Ex. B. Plaintiff sat on Bernacett and repeatedly hit him in the face with clenched fists, drawing blood. *Id.* Defendant Gonzalez sprayed another two-second burst of the pepper spray to Plaintiffs face. *Id.* Both combatants were handcuffed, and escorted to the medical clinic for decontamination and medical treatment. *Id.*

According to the medical reports, Plaintiff suffered a two-inch laceration/abrasion to his right upper shoulder. Young Decl., Ex. B at 13-14. The report states that Plaintiff informed

medical staff that he was "sitting talking to someone on a bench taking care of [Men's Advisory Council] business then [Bernacett] somehow gets out of his room then comes straight at me attacking me. I had to defend myself." *Id.*  Plaintiffs prognosis was listed as "good." *Id.* Bernacett suffered multiple injuries, including a laceration to the upper gums at the junction of his upper lip and gums, an abrasion to the right side of his neck, and several injuries to his head, nose, and left eye. Young Decl., Ex. B at 11-12.  The report states that Bernacett informed medical staff that he took "responsibility for what happened, because [Plaintiff] was telling lies about [him], saying that [he] was ratting people out...." *Id.*  Bernacett's prognosis was listed as "unknown." *Id.*

Defendants Nelson and Gonzalez prepared handwritten reports of the incident shortly after it occurred.  Nelson Decl. ¶¶ 9-10, Gonzalez Decl. ¶¶ 10-11.  The following day, Defendant Gonzalez prepared disciplinary reports for both Plaintiff and Bernacett, titled Rules Violation Reports ("CDC-115").  Gonzalez Decl. ¶¶ 10-11,  Young Decl., Exs. C and L, Rules Violation Report Nos. SATF-C-99-02-063, SATF-C-99-02-062.  Defendant Gonzalez reported both inmates for "mutual combat." *Id.*

Bernacett appeared for a hearing on Rules Violation Report C-99-02-062 on March 12, 1999.  Young Decl., Ex. L.  Bernacett pled "guilty with an explanation," on the charge of mutual combat. *Id.*  Bernacett stated that "[t]he dude had a disregard for me and disrespected me.  I tried to talk to him to no avail, so we got into a fight." *Id.*

Plaintiff appeared for his first hearing on Rules Violation Report C-99-02-063 on March 28, 1999; when Plaintiff was found guilty of the violation. Young Decl., Ex. C.  Plaintiff appealed the guilty finding because the hearing officer did not allow all requested witnesses and did not allow Plaintiff to present documentation in his defense. *Id.* at Ex. F, Inmate Appeal No. SATF-C-99-01217.  Plaintiff requested four inmate witnesses and was granted only one witness at the March 28 hearing. *Id.*  Plaintiff did not request any staff witnesses. *Id.*  Plaintiff's appeal was granted at the second level of review, ordering a new hearing and either providing the requested witnesses or a written explanation as to why they were denied. *Id.*

The second hearing occurred on June 26, 1999, when Plaintiff was again found guilty

6

of mutual combat based on his counterattack of Bernacett.  Young Decl., Ex. D, Rules Violation Report No. SATF-C-99-02-063R.  Plaintiff again appealed on due process grounds, and his appeal was granted at the second level of review because he was not provided with a copy of the incident report and all supplemental reports relied upon at the hearing.  *Id.* at Ex. G, Inmate Appeal No. SATF-C-99-02262.  A new hearing was ordered.  *Id.*

The third hearing occurred on October 15, 1999, when Plaintiff was found guilty of mutual combat, based in part upon his admission at the hearing that he "got up and smashed [Bernacett]."  Young Decl., Ex. E, Rules Violation Report No. SATF-C-99-02-063RR.  Plaintiff appealed the guilty finding again on due process grounds.  *Id.* at Ex. H, Inmate Appeal No. SATF-C-99-04361.  Plaintiff's appeal was granted at the second level of review because he again did not receive all reports until after the hearing occurred.  *Id.*

The fourth and final hearing occurred on May 13, 2000.  Young Decl., Ex. J, Inmate Appeal No. SATF-C-00-2177, at 104-05.  Plaintiff was found "not guilty" in the interests of justice, because Bernacett instigated the fight.  *Id.*  Plaintiff did not request Defendants Forner, Gonzalez, Masiel, or Nelson as witnesses at any of the four disciplinary hearings.  Young Decl., Exs. C, D, E, and J.  Plaintiff asserted at each hearing that he was not guilty of mutual combat because Bernacett attacked him, and he was entitled to defend himself.  *Id.*  On March 6, 2000, over one year following the altercation, Plaintiff submitted inmate appeal SATF-00-01126, asserting for the first time that Defendant Nelson must have purposefully opened Bernacett's cell, because Plaintiff could think of no other reason why Bernacett would attack him. Young Decl., Ex. I, Inmate Appeal No. SATF-C-00-01126, at 89-90.

Neither Defendants Nelson nor Gonzalez knew or suspected that Bernacett would attack Plaintiff when released from his cell.  Gonzalez Decl. ¶ 12, Nelson Decl.¶ 12.  Additionally, neither Defendants Nelson nor Gonzalez labeled Plaintiff as a "snitch," or observed any other officer label Plaintiff as a "snitch."  *Id.*  Defendant Nelson had no knowledge of Plaintiff's use of the inmate appeals system before the incident, was never subject to an inmate grievance filed by Plaintiff, and was unaware of any legal work Plaintiff was involved in.  Nelson Decl.¶ 11. Defendant Gonzalez used force to stop the fighting with pepper spray.  Gonzalez Decl. ¶¶ 7-8,

14. Defendant Gonzalez was aware that he was located in a Level IV facility, meaning that other officers were providing gun coverage of the dayroom floor. *Id.* ¶¶ 13-14. Officers are trained not to enter the line of fire between a disturbance and the officer providing gun coverage. *Id.* The safety and security of staff, inmates, and the general public take precedence over all other considerations in the operation of the programs and activities of California's prisons. Cal. Code Regs. tit. 15, § 3270.

IV.   **Analysis**

   A.   **Retaliation**

Retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see Brodheim v. Cry*, 584 F.3d 1263, 1269 n.3 (9th Cir. 2009) (plaintiff must demonstrate a trial issue of material fact on each element of his retaliation claim).

Defendants contend that Plaintiff's allegations that Defendants Forner, Gonzalez, Maisel, and Nelson took adverse action against Plaintiff are conclusory. Defs.' Mem. P. & A. 9:12-10-28. Defendants contend that there is no probative evidence that links Plaintiff's exercise of his First Amendment rights in the use of inmate grievances and the alleged retaliatory action of instigating an inmate attack on Plaintiff. *Id.* Defendants further contend that Defendant Nelson, who released inmate Bernacett, believed that Bernacett was conducting Inmate Advisory Council business that necessitated his cell being opened, which furthered a legitimate penological goal. *Id.*

Based on the evidence presented, and construing the facts in the favor of Plaintiff as the nonmoving party, the Court finds that Plaintiff has failed to support a retaliation claim. There is

no evidence or other documents which indicates that Defendants Forner, Gonzalez, Masiel, and Nelson took any adverse action against Plaintiff because of his protected First Amendment conduct. Additionally, Defendant Nelson was unaware that inmate Bernacett would attack Plaintiff if released from his cell. Defendant Nelson released Bernacett from the cell because he believed that Bernacett and Plaintiff were conducting business for the IAC. There is no genuine dispute of material fact as to Plaintiff's retaliation claim. Defendants Forner, Gonzalez, Masiel, and Nelson are entitled to summary judgment as a matter of law.

### B. Failure To Protect

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982). The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that officials knew of and disregarded a substantial risk of serious harm to him. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Mere negligence on the part of the official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

Defendants contend that both Nelson and Gonzalez were both unaware of any threat to Plaintiff's safety. Defs.' Mem. P. & A. 11:4-12:5. Both Defendants contend that once the incident occurred, they immediately ordered Plaintiff and Bernacett to get down and Defendant Gonzalez used pepper spray when they ignored his orders. *Id.* Defendants further contend that Plaintiff's conclusions of deliberate indifference are conclusory. *Id.*

Based on the evidence presented, and construing the facts in the favor of Plaintiff as the nonmoving party, the Court finds that Plaintiff has failed to support a failure to protect claim.

Both Defendants Nelson and Gonzalez were unaware of any threat to Plaintiff's safety, and thus were not in a position to prevent any attack. Plaintiff's arguments to the contrary are at best legal conclusions, which is insufficient to support a claim. Plaintiff also fails to present any citation to the record or other evidence that would raise a genuine dispute of material fact as to whether Defendants Forener or Masiel knew of and disregarded an excessive risk of serious harm to Plaintiff's safety. There is no genuine dispute of material fact as to Plaintiff's failure to protect claim. Defendants Forener, Masiel, Gonzalez, and Nelson are entitled to summary judgment as a matter of law.

### C. Due Process

Defendants contend that Plaintiff's claim against Defendant Gonzalez for violation of due process fails. Defs.' Mem. P. & A. 12:9-14:3. The Court had found that Defendant Gonzalez's alleged filing of a false rules violation report constituted a violation of due process.[3] Defendants contend that Plaintiff suffered no atypical and significant hardship because he was not found guilty of any rules violation.

Plaintiff appears to allege that he was improperly convicted and sentenced to a SHU term. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full

---

[3]The Court's May 30, 2008 screening had erroneously concluded that pursuant to *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997), a false rules violation report constituted a violation of due process. *See* Doc. 91. However, *Hines* concerned claims of retaliation, not due process. Thus, the *Hines* analysis is inapplicable here.

10

panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71.

Based on the evidence presented, and construing the facts in the favor of Plaintiff as the nonmoving party, the Court finds that Plaintiff has failed to support a due process claim. Plaintiff was never found guilty of a rules violation report, and thus has not demonstrated that he suffered an atypical and significant hardship pursuant to *Sandin*. Even if Plaintiff had demonstrated an atypical and significant hardship which created a liberty interest, Plaintiff has not linked Defendant Gonzalez to the deprivation of his due process rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). There is no genuine dispute of material fact as to Plaintiff's due process claim. Defendant Gonzalez is entitled to summary judgment as a matter of law.

**D.    Supervisory Defendants**

Defendants contend that Defendants Johnson, Smith, and Snell were not personally involved in the deprivation of any constitutional rights. Defs. Mem. P. & A. 14:7-16:15. The Court had found that Defendants Johnson, Smith, and Snell were responsible for the implementation of an unconstitutional policy. *Id.*; *see* Doc. 100. Defendants further contend that Plaintiff's claims against Defendants Johnson, Smith, and Snell are not plausible pursuant to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

The term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. *Iqbal*, 129 S. Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her

own misconduct.

When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Based on the evidence presented, and construing the facts in the favor of Plaintiff as the nonmoving party, the Court finds that Plaintiff has failed to support a claim for supervisory liability. Plaintiff's amended complaint was screened without the benefit of *Iqbal*. Mere legal conclusions are insufficient; rather facts must be alleged to support a claim. *Iqbal*, 129 S. Ct. at 1949; *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (bare assertions amounting to nothing more than a formulaic recitation of the elements are not entitled to an assumption of truth) (citing *Iqbal*, 129 S. Ct. at 1951). Additionally, alleged facts must meet the plausibility standard, which requires the pleading of factual content that allows the court to draw the reasonable inference that the defendant is liable for alleged misconduct. *Iqbal*, 129 S. Ct. at 1949. Such pleading is not a probability requirement, but asks for more than the sheer possibility that the defendant acted unlawfully. *Id.*

Plaintiff alleged that the supervisory Defendants created an atmosphere in which staff misconduct and abuse of prisoners was acceptable, and was the moving force behind the alleged constitutional violations. First Am. Compl. ¶ 20, Doc. 87.[4] The first allegation fails to meet the

---

[4] Defendants contend that the Court's reliance on *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) is inapplicable. Defendants contend that *Hansen* is not applicable as it applied to liability against municipalities, and is not itself an independent means of imposing liability under § 1983. The Court agrees that supervisory liability requires personal participation by the supervisory defendant. An allegation that the supervisory defendant implemented a policy that violated Plaintiff's constitutional rights may state a claim, if such supervisory defendant personally participated in a constitutional violation with that policy. The Court need not address this issue further, however, as Plaintiff has not demonstrated personal participation by any

plausibility requirement as it merely possible, not plausible, and the second allegation is a legal conclusion. Thus, Plaintiff fails to state a claim against Defendants Johnson, Smith, and Snell under a supervisory liability theory.[5] Even if Plaintiff had stated a claim, there are no facts which support a claim that Defendants Johnson, Smith, and Snell violated Plaintiff's constitutional rights. There is no genuine dispute of material fact as to Plaintiff's claims for supervisory liability, and Defendants Johnson, Smith, and Snell are entitled to summary judgment as a matter of law.

### E. State Law Claims

"The districts may decline to exercise supplemental jurisdiction over a claim . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court will recommend dismissal of Plaintiff's § 1983 claims, the Court also recommends declining supplemental jurisdiction over Plaintiff's state law claims.

### F. Qualified Immunity

Because all Defendants are entitled to summary judgment as a matter of law, the Court declines to address Defendants' arguments for qualified immunity.

### V. Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed July 10, 2009, should be granted;
2. Summary judgment should be granted in favor of all Defendants and against Plaintiff;
3. Supplemental jurisdiction over Plaintiff's state law claims should be declined; and
4. Judgment should be entered accordingly.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen**

---

supervisory defendants.

[5] The Court may revisit any orders prior to final judgment. Fed. R. Civ. P. 54(b).

13

1  **(14) days** after being served with these Findings and Recommendations, the parties may file
2  written objections with the Court.  The document should be captioned "Objections to Magistrate
3  Judge's Findings and Recommendations."  A party may respond to another party's objections by
4  filing a response within **fourteen (14) days** after being served with a copy of that party's
5  objections.  The parties are advised that failure to file objections within the specified time may
6  waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57
7  (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated: **February 2, 2012**      /s/ **Dennis L. Beck**
                                                      UNITED STATES MAGISTRATE JUDGE